UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------- x
                                                    :
**UNITED STATES OF AMERICA**                        :
                                                    :
               **- v -**                            :          **13 Cr. 756 (NRB)**
                                                    :
**ALFONSO RESCIGNO**,                               :
                                                    :
                        Defendant.                  :
--------------------------------------------------- x


## SENTENCING MEMORANDUM ON BEHALF OF
## ALFONSO RESCIGNO


DAVID PATTON, ESQ.
Federal Defenders of New York, Inc.
Attorney for Defendant
**ALFONSO RESCIGNO**
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8737

**MARTIN S. COHEN**
Of Counsel


TO:   **PREET BHARARA, ESQ**.
      United States Attorney
      Southern District of New York
      One. St. Andrew's Plaza
      New York, New York 10007
      Attn:  **JOSHUA NAFTALIS, ESQ.**
             Assistant United States Attorney

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

June 11, 2014

By ECF

Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     **United States v. Alfonso Rescigno**
        **13 Cr. 756 (NRB)**

Dear Judge Buchwald:

I write in advance of Mr. Rescigno's sentencing, which is currently scheduled for June 19, 2014, at 4:00 p.m., to respectfully request that the Court impose a sentence of time served, to be followed by a term of supervised release, with a special condition that Mr. Rescigno complete 400 hours of community service.

Alfonso Rescigno is a 73-year-old man who has worked very hard throughout his life to support his family. His actions in this case were the result of desperation, as Mr. Rescigno became overwhelmed by debt and the prospect of losing his job; his conduct stands in stark contrast to the way that he has lived his life. From the moment Mr. Rescigno was approached by agents, he took responsibility for his actions, and then continued to meet with the agents in the months preceding his arrest to help in connection with a wholly separate inquiry. Given the motivation for Mr. Rescigno's actions, his background and characteristics, and his essential caretaking responsibilities for his wife, our requested sentence will be sufficient to satisfy all the purposes of sentencing.[1]

---

[1] The Probation Department has determined that the advisory Guidelines-range is 21 to 27 months, which was the range as stipulated in the plea agreement. **The Probation Department has nevertheless recommended a sentence of six months.**  See PSR p. 19. We appreciate the Probation Department's recognition that a significant downward variance under section 3553(a) is warranted under the circumstances in this case. For the reasons discussed below, though, we believe the Court can satisfy all of the purposes of sentencing with a non-incarceratory sentence.

Honorable Naomi Reice Buchwald                                    Page 2
June 11, 2014

Re:     **United States v. Alfonso Rescigno,**
        **13 Cr. 756 (NRB)**

I.      **The Standard**

        The Guidelines range is but one of many factors set forth in 18 U.S.C. § 3553(a) that a district court is to consider when imposing sentence.  See generally United States v. Booker, 543 U.S. 220 (2005).  "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."  Nelson v. United States, 129 S. Ct. 890, 892 (2009) (emphasis in original).  A district court's disagreement with the policy considerations of the Guidelines, for example, is a legitimate basis for sentencing below a given range.  See Gall v. United States, 128 S.Ct. 586, 602 (2007) (upholding a district court's sentence of probation in a case involving the distribution of over 10,000 pills of ecstasy where the Guidelines' range was 30-37 months);  Kimbrough v. United States, 128 S.Ct. 558, 576 (2007) (upholding a district court's decision to sentence a defendant below the Guidelines range based on a disagreement with the Guidelines' policy of treating the distribution of crack cocaine more severely than powder cocaine).  In every case, the sentencing court "must make an individual assessment based on the facts presented."  Gall, 128 S.Ct. at 597.

        The overarching command of Section 3553(a) is that sentences should be "sufficient, but not greater than necessary" to achieve the basic goals of retribution, deterrence and rehabilitation. To arrive at such a sentence, district courts are directed to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the need for the sentence imposed to provide just punishment, deterrence, and needed educational and vocational training; (3) the kinds of sentences available; (4) the Guidelines-range and any pertinent policy statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution.  See 18 U.S.C. § 3553(a).

**The Sentencing Factors**

        **A.  The Nature of the Offense Supports the Requested Sentence.**

        This was a crime of desperation, committed by a man in his early 70s who had lived an otherwise exemplary life; a man who was not able to temper his need to support his family, including his adult daughter and her three children, when faced with the realities of his own financial straits; a man who was not able to share with anyone how desperate his situation was; who borrowed money to make up the shortfall; and then, having exhausted every potential borrower, and believing, probably correctly, that he would lose his job if he was unable to pay his debts (in particular, the debt to his

Honorable Naomi Reice Buchwald                                                Page 3
June 11, 2014

**Re:**     **United States v. Alfonso Rescigno,**
            **13 Cr. 756 (NRB)**

employer, from whom he had borrowed $80,000, at interest), began committing this crime.

        Mr. Rescigno has described the offense in detail to the Probation Officer, explaining how, after a long and honorable career, he began to steal from the bank in a desperate attempt to cover his debts. See PSR ¶ 19. His state-of-mind when committing the offense is a very important factor for the Court to consider, but is not an excuse: Mr. Rescigno well recognizes that "no amount of financial desperation can justify [his] conduct." See id.

        This offense was highly unsophisticated: Mr. Rescigno deposited checks made out to the bank into his personal account. When he was approached by agents in about February 2013, Mr. Rescigno's initial reaction was one of relief. His offense conduct was so antithetical to the way that he had lived his entire life that it was cathartic to come clean. Mr. Rescigno immediately took full responsibility for his actions, and then, over the course of the next about six months, met with agents on a number of occasions to assist them in connection with their investigation into matters unrelated to the offense. (These meetings all preceded his arrest in this case. He was approached by agents in February 2013, and was arrested in August 2013.) Mr. Rescigno was fully forthcoming with the agents, and the Court should view his willingness to assist the government without any expectation of a benefit as evidence of his full acceptance of responsibility, as well as an indication of his fundamentally good character.

        Throughout the offense conduct, Mr. Rescigno made monthly interest payments to his employer. The Court should note that *after* his theft was discovered, and Mr. Rescigno was fired from the bank, he was able to refinance his house and repay his entire debt, plus interest, to his employer. In the end, Mr. Rescigno paid about $115,000 to his employer, representing the $80,000 loan principal, plus $35,000 in interest. Mr. Rescigno's repayment of this debt provides insight into his character, and his desire to do everything he can to make amends.

        Here, the nature of this offense – a generous man, devoted to his family, driven by desperation to commit a crime that was wholly antithetical to the way he has lived his entire life – supports our requested sentence.

Honorable Naomi Reice Buchwald                                    Page 4
June 11, 2014

Re:     <u>United States v. Alfonso Rescigno,</u>
        **13 Cr. 756 (NRB)**

### B.  Mr. Rescigno's Background and Characteristics Strongly Support the Requested Sentence.

Alfonso Rescigno was born in 1940 to Enrico and Mary Rescigno, first-generation Italian immigrants. <u>See</u> PSR ¶ 39. Alfonso grew up in a blue-collar neighborhood in Brooklyn, where his parents both worked at factories. His father was a sheet metal mechanic at Sterling Bags, and his mother worked at a candy manufacturer. Alfonso and his younger sister Rosemary grew up in a strict household, and both attended a parochial elementary school.  Alfonso cleaned the house and took care of his sister from an early age, as both his parents worked long hours at the factories.

In 1958, Mr. Rescigno graduated from New Utrecht High School. This was a huge accomplishment for him, as his parents had never graduated from high school. He continued his education at New York City Community College, where he studied commercial art for a little over a year. Needing to earn more money, though, Mr. Rescigno began working full-time. His first job was as a teller for Chemical Bank. <u>Id.</u> ¶ 68. He was to remain in the banking industry for the next 50 years.

While working at Greater New York Savings Bank, Mr. Rescigno married his high-school sweetheart, Felecia Manolescu. <u>Id.</u> ¶ 40. At the time, she was working as a secretary at a chemical company. They moved from Brooklyn to Queens, where they bought a house in Howard Beach. In 1969 they had their first child together, Susanne Rescigno. A year later, their daughter Debra was born. <u>Id.</u>

### 1.  Mr. Rescigno's career reflects a man who worked tirelessly his entire life.

One of the tragic aspects of this case is that Mr. Rescigno has destroyed what was otherwise a long and impressive career. At every bank where he worked, he was a valued employee, slowly working his way up the ladder by dint of an extraordinary work ethic. He worked long hours, and took classes at night to expand his skills. <u>Id.</u> ¶ 54. His daughter recalls how Mr. Rescigno would be "dressed and out the door by 5:00 am every morning – long before the office was open." <u>See</u> letter of Debra Rescigno, attached as Exhibit C.

Over the years, Mr. Rescigno's hard work paid off, with significant increases in salary and job responsibilities. <u>See</u> PSR ¶¶ 56 to 68. In about December 2003, Mr.

Honorable Naomi Reice Buchwald                                              Page 5
June 11, 2014

Re:      **United States v. Alfonso Rescigno,**
         **13 Cr. 756 (NRB)**

Rescigno began working at the First Central Savings Bank in Glen Cove, Long Island as
a senior vice president.

Prior to this offense, Mr. Rescigno could look back on 50 years of loyal service in
the banking industry, for which he was justly proud. By committing this offense, he has
destroyed his life's work.

### 2.  Mr. Rescigno is a supportive and loving husband, father and grandfather.

As the letters to the Court make clear, Mr. Rescigno has been a devoted, involved,
and supportive husband, father and grandfather. Mr. Rescigno's support of his children –
both emotional and financial – has continued well into their adulthood. As Susanne
explains in her letter, Mr. Rescigno provided absolutely critical support during and after
her divorce from her husband (who has since passed away.) See Exhibit A. After her
divorce, when her children were aged 11, 9, and 6, Susanne and her children moved in
with Mr. Rescigno and his wife. Susanne was often out of work, and she and her children
relied almost entirely on her father for financial support. Just as importantly, Mr.
Rescigno became the primary father-figure for his grandchildren: Susanne writes:

> My father has supported my children emotionally and has been the
> most stable father figure in their lives. This is especially true since
> my ex-husband's passing 5 years ago. My boys look up to their
> grandfather and are hard workers based on the example set by my
> father. . . . [H]e essentially saved the lives of his grandchildren and
> helped me to raise three great kids. I am proud to report that my
> oldest son is now in college and working hard as a result of the
> example set by his grandfather. My other two are also doing very
> well in high school and elementary school.

See Ex. A.

All of the letters to the Court stress Mr. Rescigno's kind and generous nature, and
his devotion to his wife, children, and grandchildren:

- Susanne Rescigno (daughter): My father is family-oriented and has supported
  me and my three children, both financially and emotionally, our entire lives. . .
  . After a nasty divorce, I was left with three little children and no means to
  support them. My father stepped in and paid for everything, including putting
  a roof over our heads and food in our stomachs. In 2006, we moved to New

Re:     **United States v. Alfonso Rescigno,**
        **13 Cr. 756 (NRB)**

York and have lived with my father since that date. . . . I honestly don't know
where my children and I would be without him and my mother. See letter of
Susanne Rescigno, attached as Exhibit A.

- Felecia Rescigno (wife): I am 70 years old and on September 22nd I will be
  married to Alfonso for 52 years. I love and respect him for the man he has
  been for all these years. . . . [After describing Mr. Rescigno's relationship with
  his daughters and grandchildren,] we are so blessed God has been so good to
  us and I thank him everyday for what we have. . . . Al is a wonderful person
  and is loved and respected by everyone. I will be lost without him. See letter
  of Felicia Rescigno, attached as Exhibit B.

- Debra Rescigno (daughter): My father is a man who always provided for his
  family, took care of his responsibilities and worked hard to make a living. I
  remember him being dressed and out the door by 5:00 am every morning –
  long before the office was open. He provided us with a stable, loving home
  and has always helped me and my sister in any way he could – including
  supporting my sister and her children long after he had any obligation to do
  so. See letter of Debra Rescigno, attached as Exhibit C.

- Catherine Stanton (long-time friend): Throughout the decades I have known
  Al, I have only known him to be a hardworking man who was a consummate
  professional in his job in the banking industry. He is also a true gentleman, a
  great dad and supportive grandfather. I know he has helped his daughter and
  grandchildren financially and they are currently living with him and his wife
  in their home. He has provided his grandchildren a stable environment and has
  been an excellent male role model for them after their father passed away. His
  work ethic was incredible and his energy boundless. See letter of Catherine
  Stanton, attached as Exhibit D.

### 3.  Mr. Rescigno provides crucial caretaking for his ill wife.

Alfonso and Felecia Rescigno have been married for over 50 years. Over the past
decade, Felecia's health has significantly deteriorated. She is diabetic, very overweight,
and has severe osteoporosis. See PSR ¶ 42. Mrs. Rescigno needs help getting out of bed,
as well as getting up and down stairs. She cannot bend over; or drive; or go shopping. Mr.
Rescigno takes Mrs. Rescigno to her various doctor's appointments, does all the shopping
for the house, and is responsible for most household chores. As Mrs. Rescigno writes in

Honorable Naomi Reice Buchwald                                    Page 7
June 11, 2014

Re:     **United States v. Alfonso Rescigno,**
        **13 Cr. 756 (NRB)**

her letter to the Court, she "will be lost without him." <u>See</u> letter of Mrs. Felecia Rescigno,
attached as Exhibit B.

        The Court should consider Mr. Rescigno's devotion to his wife as an important
factor in evaluating his character. The Court should also take into consideration Felicia's
reliance on Mr. Rescigno and his caretaking responsibilities towards her in fashioning an
appropriate, non-incarcerative sentence here. There is no one else besides Alfonso who
can provide the daily, extensive care that Felecia needs, and even the relatively short term
of incarceration recommended by the Probation Department will result in extraordinary
hardship for Felecia. <u>Cf.</u> <u>United States v. Johnson</u>, 964 F.2d 124, 128 (2d Cir. 1992)
(explaining, in a pre-*Booker* case, that the purpose of a downward departure based on
family responsibilities is not to benefit the defendant, but to protect those who rely on the
defendant from extraordinary hardship).

        Finally, the Court can note that while Mr. Rescigno is in decent health, he also
suffers from a variety of illnesses, including cancer (he had two surgeries related to
prostate cancer) and bad knees (both his knees have been replaced). <u>See</u> PSR ¶ 45.
Among other medical issues, Mr. Rescigno has an implanted artificial urinary sphincter,
which he must manually squeeze in order to urinate. Incarceration for Mr. Rescigno will
be significantly more difficult than for most people, and his age and medical condition
support the imposition of a non-incarceratory sentence.

        In sum, Mr. Rescigno's background and characteristics strongly support our
requested sentence.

### C.  Our Requested Sentence Will Satisfy All The Purposes of Sentencing

        Our requested sentence, which includes the imposition of 400 hours of
community service, will be sufficient to satisfy all of the purposes of sentencing:

        *Punishment*: A *non-incarceratory* sentence, such as our requested sentence in this
case, is not a *non-punitive* sentence. As Judge Gleeson has emphasized in the context of a
probationary sentence, "when a judge chooses between a prison term and probation, she
is not choosing between punishment and no punishment. Probation is less severe than a
prison term, but both are punishment. And as the Supreme Court has recognized,
probation is *significant* punishment." <u>United States v. Leitch</u>, et al., 2013 WL 753445, at
*12 (E.D.N.Y. Feb. 28, 2013) (emphasis in original) (citing <u>Gall v. United States</u>, 552
U.S. 38, 48-49 (2007)). "In addition to standard and special conditions, there is an array
of alternative sanctions—home confinement, community service, and fines, for

Honorable Naomi Reice Buchwald                                                    Page 8
June 11, 2014

Re:     **United States v. Alfonso Rescigno,**
        **13 Cr. 756 (NRB)**

example—that allow judges to impose enhanced (and sometimes even constructive)
punishment without sending the defendant to prison." Leitch, 2013 WL 753445, at *12.

        The Court can, of course, impose additional punitive conditions here, including
home detention, or curfew. We believe, though, that home detention is not warranted for
at least two reasons: First, Mr. Rescigno's caretaking responsibilities require him to run
errands and take Mrs. Rescigno to the doctor or hospital. His responsibilities in this
regard are unpredictable, and it will be very difficult to create a reliable schedule that
would allow Mr. Rescigno to do everything he needs to do for his wife while on home
detention. Secondly, Mr. Rescigno is looking for work, and home detention will make
that project much more difficult.

        *Deterrence*: The Court should have no concern whatsoever about recidivism here.
As described above, this offense was the desperate act of a fundamentally good man. Mr.
Rescigno is extraordinarily remorseful and ashamed, and will do everything he can to
make amends. And while general deterrence is "a phenomenon that is notoriously
difficult (and perhaps impossible) to measure," see United States v. Brady, 2004 WL
86414, at *9 (E.D.N.Y. Jan 20, 2004), there should be little dispute that a person
contemplating committing a similar offense will find Mr. Rescigno's prosecution to be an
extraordinarily cautionary tale.

        *Incapacitation*: For all the reasons set forth above, there is no need whatsoever for
the Court to impose an incarceratory sentence to protect the public. On the contrary,
given Mr. Rescigno's caretaking role towards his wife, society will be better off with Mr.
Rescigno remaining at home with his wife and family.

        *Payment of Restitution*: Incarceration would adversely impact Mr. Rescigno's
ability to pay restitution in a variety of ways. First, his current source of income is social
security. A person is *ineligible for social security*, *however*, *while incarcerated*. See
Social Security, What Prisoners Need To Know, available at:
http://www.ssa.gov/pubs/EN-05-10133.pdf (a person will not receive Social Security
benefits during his incarceration or for the month after his release.). Incarceration will
also delay his ability to look for work, and will significantly impact the type of work he
can get upon release. See The Pew Charitable Trusts, Collateral Costs: Incarceration's
Effect on Economic Mobility, at 11 (2010) (finding, among other things, that past
incarceration reduces future yearly earnings by 40 percent), available at:
http://www.pewtrusts.org/uploadedFiles/Collateral_Costs.pdf?n=8653.

Honorable Naomi Reice Buchwald                                             Page 9
June 11, 2014

Re:      **United States v. Alfonso Rescigno,**
         **13 Cr. 756 (NRB)**

     *Promoting Respect for the Law*: Our requested sentence fundamentally promotes respect for the law, as it is a sentence well-tailored to Mr. Rescigno, his background and characteristics, and his caretaking responsibilities. It is a sentence that fulfills the fundamental command of section 3553(a), which is for a Court to fashion a sentence for an individual defendant that is no greater than absolutely necessary to satisfy all the purposes of sentencing.

### D.  Waiver of Interest Requirement

     We respectfully request that the Court waive the requirement of interest on restitution pursuant to 18 U.S.C. § 3612(f)(3). A waiver of interest will enable Mr. Rescigno to make restitution without the overwhelming burden of interest compounded daily. (Under 18 U.S.C. § 3612(f), interest accrues daily on the unpaid restitution balance.)

### III.      Conclusion

     For the reasons set forth above, I respectfully request that the Court impose a sentence of time served, to be followed by a term of supervised release with the special condition that Mr. Rescigno complete 500 hours of community service. Under the circumstances in this case, such a sentence will be sufficient to satisfy all the purposes of sentencing**.**

                                Respectfully submitted,

                                /s/ _____
                                Martin S. Cohen
                                Ass't Federal Defender
                                Attorney for **Alfonso Rescigno**
                                Tel.: (212) 417-8737

cc:      Joshua Naftalis, by ECF
         Mr. Alfonso Rescigno, by U.S. mail

Exhibit A

SUSANNE RESCIGNO
161-34 97th St.
Howard Beach, N.Y. 11414
(718) 323-6756 (Home)
(646) 427-1157 (Cell)


October 8, 2013


Your Honor,

My name is Susanne Rescigno and I am the oldest daughter of defendant, Alfonso Rescigno. I am 49 years old and the mother of three children, ages 18, 16 and 13. My whole life, I have known my father to be an honest, hard-working and law-abiding man. How he got into this situation is incomprehensible to me, as this is not the person I know and love.

My father is family-oriented and has supported me and my three children, both financially and emotionally, our entire lives. I married in 1993 and when my ex-husband could not afford to purchase or rent a home for us, my father allowed us to live rent-free in a condominium he owned.  We lived there for 8 years rent-free and my father never complained about the financial burden. After a nasty divorce, I was left with three little children and no means to support them. My father stepped in and paid for everything, including putting a roof over our heads and food in our stomachs. In 2006, we moved to New York and have lived with my father since that date. My father went through great expense to make his small three bedroom home comfortable for me and my children. He and my mother spent their life savings to add a second floor to the home so that me and my children would have sufficient bedrooms and space. In addition, my father pays for all the utilities and food. I honestly don't know where my children and I would be without him and my mother.

In addition to financial support, my father has supported my children emotionally and has been the most stable father figure in their lives. This is especially true since my ex-husband's passing 5 years ago. My boys look up to their grandfather and are hard workers based upon the example set by my father. Your Honor will judge view my father based solely upon his actions here, but I implore you to consider his life, too, and how he essentially saved

the lives of his grandchildren and helped me to raise three great kids. I am proud to report that my oldest son is now in college and working hard as a result of the example set by his grandfather. My other two are also doing very well in high school and elementary school.

It is true that a crime has been committed and the guilty party must own up to the consequences. I do not dispute this. But I ask, on behalf on my children, that you consider the totality of my father's life and his actions that warrant merit. My father knows that he has done wrong and deeply regrets his actions. I don't think that society would benefit from sending my father to jail given his advanced age and poor health.

Thank you for your consideration.

Respectfully,

Susanne Rescigno

Exhibit B

Feb 25, 2014

Honorable Naomi Reice Buckwald
U.S. District Judge
Southern District of New York
United States Courthouse
500 Pearl St
New York, N.Y. 10007

Re: Alfonso Rescigno

My name is Felicia Rescigno. I am 70 years old
and on September 22nd I will be married to
Alfonso for 52 years. I love and respect him
for the man he has been for all these years.

We have two daughters, Susanne Annino, a
para legal in Nassau County, mother of three.
Stephen, first year, St Johns University,
Nicholas, second year St Francis Prep,
Felicia, will attend St Francis Prep this September.

Susanne's husband passed away January 24, 2009
while having a heart transplant. When this happened,
Al being the great Dad he is, suggested we add
a floor to our home. Susanne was out of work
at that time and Al just wanted her and the children
to be financialy okay. I believe this was when our

troubles started.

Our second daughter, Debra Rescigno Baron is an attorney in Florida for the past 25 years. She is the mother of 2 children, Alex 13 years old attends St Anns Academy and Alivia 10 years old attends Binks gifted program.

We are so blessed God has been so good to us and thank Him everyday for what we have. My daughters and I have decided not to tell the children about Pop's situation until we know the end results.

Both Al and I are not in the best of health. Al is a cancer survivor and has several other issues. I am a Diabetic, insulin dependent. I have a chronic back problem, due to a fall several years ago, left me walking with help of a cane.

In closing, Al is a wonderful person and is loved and respected by everyone.

I will be lost without him.

Respectfully

Mrs Felicia Rescigno

Exhibit C

June 3, 2014

Honorable Naomi Reice Buchwald
United States District Judge
500 Pearl Street
New York, New York 10007

Dear Judge Buchwald,

Writing this letter is one of the saddest things I have had to do--never would I have believed that my father would steal money from anyone; let alone his employer, for whom he had always worked so hard.

I don't know why my father stole the money and may never know the truth about the situation; however, while I hate the sin, I have tremendous compassion and love for the sinner.

My father is a man who always provided for his family, took care of his responsibilities and worked hard to make a living. I remember him being dressed and out the door by 5:00 am every morning - long before the office was open. He provided us with a stable, loving home and has always helped me and my sister in any way he could-- including supporting my sister and her children long after he had any obligation to do so.

There are many things about my father's personal life that he has not shared with me - I have lived in Florida since 1982 -- but I do know that he is a very good person who has obviously made some very bad choices. Nonetheless, I ask that you show him mercy in deciding his sentence - given his advanced age and declining health, I am not sure he would survive a prison sentence. I am hoping there is an alternative sentence for him that will allow him to repay his debt to society while still be able to help my mother, whose health is also not well.

Thank you,


Debra Rescigno

Exhibit D



# Pasternack Tilker Ziegler
# Walsh Stanton & Romano LLP
Attorneys At Law

25 Newbridge Road
Suite 203
Hicksville, NY 11801-2887

P: 800.692.3717
P: 516.742.3773
F: 516.742.3994

www.workerslaw.com

Author's Direct:

May 27, 2014

Re: Al Rescigno

Dear Honorable Judge:

My name is Catherine Stanton. I am currently an attorney licensed to practice in the State of New York having been admitted in 1990. I have been asked to submit this letter on behalf of Al Rescigno.

I first met Al Rescigno about 35 years ago as he was the father to two of my closest friends. During these past decades I grew up around him and I now consider him a personal friend. I have spent much of my teenage years at his home and am still a frequent visitor. Al has always been kind and compassionate to me. He has a great sense of humor and as a child always made me feel like a member of his family. He has always treated me with respect and I have been welcomed into his home. As I went thru school and graduated from college and then law school our relationship became more as contemporaries. Through out the decades I have known Al; I have only known him to be a hardworking man who was a consummate professional in his job in the banking industry. He is also true gentlemen, a great dad and supportive grandfather. I know he has helped his daughter and grandchildren financially and they are currently living with him and his wife in their home. He has provided his grandchildren a stable environment and has been an excellent male role model for them after their father passed away. His work ethic was incredible and his energy boundless as I know Al has had a number of health issues in the past but he consistently returned to his job despite multiple surgeries and medical setbacks. I am aware of the charges against him and truly feel that anything that he might have wrongfully done must be an aberration as it does not fit the profile of the person I have known for all these decades. It came as a great shock to me to hear that he would be involved in any activity that is not above board as that has never been my experience nor does it fit the characteristics of him in any way. I am asking that you show compassion and leniency based upon his past character, his age and his medical conditions. Thank you for allowing me to submit this on his behalf and hope that you will take all of these factors into consideration.

Respectfully,

Catherine Stanton